IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON CUMMINGS,<br>Plaintiff,<br><br>vs.<br><br><br><br>GOOGLE, LLC, a Delaware Corporation,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:26-cv-05611<br><br>Judge Martha Pacold<br><br>Magistrate Judge Keri L. Holleb-Hotaling |

**DEFENDANT'S MEMORANDUM IN**
**SUPPORT OF OPPOSED RULE 12(b)(6) MOTION TO DISMISS**

## I. INTRODUCTION

Defendant Google, LLC ("Google" or "Defendant") employed Plaintiff Jason Cummings as a Level 6 Field Representative ("FSR") from December 2022 through his termination on August 5, 2025. (ECF No. 1 at ¶¶ 7, 23 ("Complaint")). Over the course of his employment, Plaintiff alleges he experienced a series of unwanted conduct, including being excluded from meetings, receiving a negative performance review, and being "recognize[d]" for his football accomplishments rather than his academic achievements, which he maintains were motivated by his race (non-White) and together amounted to a hostile work environment. (*Id.* at ¶¶ 18, 20, 30). Following his termination, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging he was discriminated against and harassed because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (Counts I and II), Section 1981 of the Civil Rights Act, 42 U.S.C. § 1981 ("Section 1981") (Count III), and the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* ("IHRA") (Counts IV and V). (*Id.* at ¶ 6).

Plaintiff's claims are deficient and the Complaint should be dismissed for three reasons. First, Plaintiff's harassment claims (Counts II and V) are, at best, minor slights, and do not rise to the level of a hostile work environment or state actionable adverse employment actions necessary to support his claim. Second, Plaintiff's discrimination claims (Counts I, III, and IV) are equally deficient, because Plaintiff does not allege his termination – the only adverse employment action he alleges – was motivated by race. Third, and finally, Plaintiff's IHRA claims should be separately dismissed because he failed to exhaust his administrative remedies with the Illinois Department of Human Rights ("IDHR"). For these reasons, as further explained herein, Defendant respectfully requests this Court grant its Motion to Dismiss ("Motion"), dismiss the Complaint with prejudice in its entirety, and enter such other relief as this Court deems just and proper.

## II. RELEVANT FACTS[1]

Google employed Plaintiff as an FSR from December 2022 through August 5, 2025. (Compl. at ¶¶ 7, 23). During his employment, Plaintiff reported up to Joel Pingel. (*Id.* at ¶ 12). Plaintiff alleges he was the only non-White FSR in his region. (*Id.*).

During his employment, Plaintiff alleges he was subjected to the following unfair treatment:

- He requested, but was denied, additional performance evaluations from Mr. Pingel (*Id.* at ¶¶ 15 and 28);
- Mr. Pingel excluded Plaintiff from two meetings (*Id.* at ¶ 18);
- Plaintiff received a negative performance review in mid-June 2025 for underperforming on certain metrics (*Id.* at ¶ 20);
- Plaintiff believes Mr. Pingel deleted a document Plaintiff had prepared from Google's database (*Id.* at ¶ 22);

[1] Defendant presents these facts solely for purposes of the Motion, and reserves the right to challenge the allegations contained in the Complaint outside the context of this Motion.

- Mr. Pingel "interject[ed]" a White FSR into one of Plaintiff's accounts (*Id.* at ¶ 25);
- Mr. Pingel admonished Plaintiff for failing to provide a new customer engineer with calendar access (*Id.* at ¶ 26);
- Mr. Pingel admonished Plaintiff for violating company policy (*Id.* at ¶ 27);
- Mr. Pingel did not "acknowledge" a document Plaintiff prepared (*Id.* at ¶ 28);
- Mr. Pingel spent two hours assisting another FSR but not Plaintiff with a presentation (*Id.* at ¶ 29);
- Plaintiff did not receive an opportunity to present in front of his managing director (*Id.*);
- Plaintiff's superiors, including Mr. Pingel, voiced how impressed they were by Plaintiff's college football career (*Id.* at ¶ 30); and
- Plaintiff's managing director once commented that his daughter's sorority had accepted a girl with brunette hair into the sorority and was becoming "diverse" (*Id.* at ¶ 31).

On August 5, 2025, Google terminated Plaintiff's employment for poor performance. (*Id.* at ¶ 23). At the time of his termination, Plaintiff was not the top performing FSR in his region. (*Id.* at ¶ 24).

On November 4, 2025, Plaintiff filed the Charge with the EEOC. (*Id.* at ¶ 6). On February 19, 2026, Plaintiff received a Notice of Right to Sue from the EEOC. (*See* Ex. A to Complaint). This Complaint followed. (ECF No. 1).

## III. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As the Supreme Court has explained, the plausibility standard is not a "probability requirement," but calls for "more than sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678.

"[W]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations omitted).

## IV. ARGUMENT

### A. Plaintiff's allegations are neither severe nor pervasive nor connected to his race, and therefore his harassment claims (Counts II and V) should be dismissed.

To succeed on a hostile work environment claim, Plaintiff must demonstrate: "(1) he was subject to unwelcome harassment, (2) the harassment was based on his race, (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment, and (4) a basis exists for employer liability." *Duniya v. Power*, No. 21 C 3399, 2023 WL 7411689, at *2 (N.D. Ill. Nov. 9, 2023) (dismissing Title VII harassment claim with prejudice because plaintiff's unpleasant work experiences – including being the only employee precluded from attending a development trip, mandatory daily meetings, harsh language, and a single physical encounter with his supervisor – were insufficiently severe or pervasive).[2] Whether an environment is sufficiently hostile depends on the circumstances, including the frequency and severity of the allegedly discriminatory conduct; whether it is physically threatening or humiliating, compared to a mere offensive utterance; and whether it "unreasonably interferes with an employee's work performance." *Id.* at *3 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Even accepting, for purposes of this Motion, Plaintiff's allegations as true, he has not satisfied his burden. For example, none of the following are sufficiently severe or pervasive to establish a hostile work environment: reassigning an account from Plaintiff to another FSR;

[2] "Illinois courts apply the federal Title VII framework to IHRA claims." *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016).

declining Plaintiff's requests for informal performance reviews outside of the normal review period and processes; excluding Plaintiff from two meetings; giving Plaintiff a negative performance review due to his underperformance in certain metrics; deleting a document prepared by Plaintiff; adding another FSR to an existing account; admonishing Plaintiff for failing to provide an engineer with calendar access; admonishing Plaintiff for violating company policy; failing to "acknowledge" a document prepared by Plaintiff; spending two hours helping another FSR with her presentation rather than Plaintiff; Plaintiff's not presenting in front of his managing director; "recogniz[ing]" Plaintiff for his collegiate football career, but not his academic credentials; and a single comment from Plaintiff's managing director that his daughter's sorority accepting a girl with brunette hair increases its racial diversity. (Compl. at ECF No. 1, ¶¶ 14, 15, 18, 20, 22, 25-31).

Even accepting each allegation as true, none of them – whether taken individually or collectively – describe harassment so "severe or pervasive [so as] to alter the conditions of employment and create an abusive working environment." *Ezell v. Potter*, 400 F.3d 1041, 1048 (7th Cir. 2005) (finding postmaster's comments – such as "men are lazy and 'want to milk all the overtime they can get'" – rude and inappropriate, but not severe and pervasive); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988) ("[s]imple teasing [omitting citation], offhand comments, and isolated incidents (unless extremely serious), will not amount to discriminatory changes in the 'terms and conditions of employment.'") (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)); *Duniya*, 2023 WL 7411689, at *3 (finding allegations that Plaintiff was excluded from a development trip and subjected to a performance review that a non-supervisor, White employee attended insufficiently severe or pervasive); *Triplett v. Starbucks Coffee*, No. 10 C 5215, 2011 WL 3165576, at *5–7 (N.D. Ill. July 26, 2011) (J. Kendall)

(dismissing hostile work environment claim despite allegations of a racially insensitive comment, racially based disciplinary actions, and discrimination against African American employees on multiple occasions).

Moreover, even a generous reading of the Complaint reveals no connection between several of Plaintiff's allegations and his race. For instance, Plaintiff does not allege that the various, normal workplace decisions, feedback, assignments and other conduct he alleges occurred (such as Plaintiff's supervisor refusing to meet with him outside the performance evaluation period, excluding him from meetings, giving him a negative performance review, adding another FSR to an existing account, admonishing him for failing to give someone calendar access and separately admonishing him for violating company policy, failing to "acknowledge" a document Plaintiff prepared, and praising Plaintiff for his football prowess), even if rude, were directed at him because of his race. *See Duniya*, 2023 WL 7411689, *3 (noting there "must be *some* connection [between harassment and race], for 'not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority.'") (emphasis in the original) (quoting *Zayas v. Rochford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014)). The lone possible exception – a single offhand comment from Plaintiff's managing director that the director's daughter's sorority was becoming more diverse – is, at best, an isolated incident. *See e.g.*, *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002) (isolated incidents of racial harassment, such as using the N-word in plaintiff's presence, were not severe or pervasive enough to alter conditions of employment).

Ultimately, all of Plaintiff's allegations, whether looked at individually or even collectively, do not rise to the level of any inappropriate or actionable conduct. Rather, Plaintiff alleges, at best, a small number of undesirable interactions and one off-color comment that, while

perhaps unpleasant, simply do not give rise to harassment under the law. *See e.g.*, *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018) ("[E]mployers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace."); *Poullard v. McDonald*, 829 F.3d 844, 859 (7th Cir. 2016) (verbal harassment, pay disparity, and letter of admonishment were not "severe or pervasive enough to rise to the level of a hostile work environment."). Accordingly, Counts II and V should be dismissed in their entirety, along with the rest of the Complaint.

### B. The Complaint does not connect Plaintiff's termination to his race and therefore his discrimination claims (Counts I, III, IV) should be dismissed.

To state a claim for race discrimination under Title VII (Count I), Section 1981 (Count III), or the IHRA (Count IV), Plaintiff must establish: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) a connection between membership in the protected class and the adverse employment action. *See McKay v. City of Chicago*, Case No. 21-cv-00577, 2024 3251349, *8 (N.D. Ill. July 1, 2024) (dismissing Title VII discrimination claim).[3]

As an initial matter, the only adverse employment action Plaintiff alleges is his August 5, 2025 termination. (Compl. at ¶ 23). The litany of other conduct alleged in the Complaint (*see* Argument IV(A)), even if true, constitutes ordinary workplace grievances and petty slights, none of which rising to the level of an adverse employment action. *See Parks v. Speedy Title & Appraisal Rev. Servs.*, 318 F. Supp. 3d 1053, 1062-63 (N.D. Ill. 2018) (dismissing discrimination claims; finding no adverse actions where Plaintiff received two corrective actions, was yelled at, received an unbalanced workload, and believed she held a different position than the one assigned

[3] "The Court's analysis of whether allegations of racial discrimination in the workplace are actionable is identical under Title VII and § 1981." *Muhammad v. Univ. of Chicago*, No. 16-CV-09998, 2019 WL 13075598, at *2 (N.D. Ill. Mar. 31, 2019); *see also Volling*, 840 F.3d at 383.

to her); *Adam v. Obama for America*, 210 F. Supp. 3d 979, 988 (N.D. Ill. 2016) (Durkin, J.) (dismissing Section 1981 claim; allegations that the plaintiff was excluded, grabbed, screamed at, and demoted from intern to volunteer, while impolite, did not change her "wealth" and "career prospects"); *Gilhooly v. UBS Securities, LLC*, 772 F. Supp. 2d 914, 917 (N.D. Ill. 2011) (Kendall, J.) (dismissing discrimination claims; allegations that plaintiff was overly criticized and blamed for mistakes that did not exist did not plausibly plead a materially adverse employment action).

In an apparent attempt to satisfy the third prong, the Complaint summarily concludes Plaintiff was terminated due to his race because he was the only non-White FSR. (Compl. at ¶¶ 12, 34). This is not sufficient. That Plaintiff may have been the only non-White FSR in his region does not alone establish that any action taken against him was done so on account of his race. *Loving v. Lew*, 512 F. App'x 616, 619 (7th Cir. 2013) (reiterating that plaintiff being the only black employee in a group is not sufficient to support the inference that plaintiff was targeted because of his race); *Duniya*, 2023 WL 7411689, *3 ("[N]ot every perceived unfairness in the workplace may be ascribed to discriminatory motivation *merely because the complaining employee belongs to a racial minority*.") (emphasis added; omitting quoting authority).

Moreover, even if the Complaint connected Plaintiff's race to the treatment he allegedly endured – which it does not (*see* Section IV(A) at p. 6) – Plaintiff does not connect that conduct to his termination. *Parks*, 318 F. Supp. 3d at 1064 ("Plaintiff does, at certain points in her Amended Complaint, allege that Defendants actions were motivated by her race and by her gender. However, Plaintiff only makes these allegations with respect to the 'petty slights' that are not sufficient to support a Title VII discrimination claim because they are not materially adverse employment actions."). Specifically, the Complaint is silent as to how Plaintiff's August 5, 2025 termination relates to any of the following allegations:

- Plaintiff's undated requests for additional performance evaluations (Compl. at ¶¶ 15 and 28);
- Plaintiff's exclusion from two meetings on unidentified dates (*Id.* at ¶ 18);
- Plaintiff's belief that his supervisor deleted a document Plaintiff prepared on an unidentified date (*Id.* at ¶ 22);
- Defendant's "interject[ing]" a White FSR into one of Plaintiff's accounts on an unidentified date (*Id.* at ¶ 25);
- Receiving two supervisor admonishments (for "failing to provide a new customer engineer with calendar access" and "violating a company policy") (*Id.* at ¶¶ 26 and 27);
- A supervisor's failure to "acknowledge" a document Plaintiff prepared (*Id.* at ¶ 28);
- An occasion when a supervisor spent two hours assisting another FSR but not Plaintiff (*Id.* at ¶ 29);
- Plaintiff's not being invited to present in front of his managing director, whom he alleges one time commented that the director's daughter's sorority was becoming diverse (*Id.* at ¶¶ 29 and 31); or
- Plaintiff's displeasure with being "recognized" for his football accomplishments (*Id.* at ¶ 30).

Only Plaintiff's negative performance evaluation (*id.* at ¶ 20) is arguably related to his termination for poor productivity, which the Complaint summarily concludes was motivated by Plaintiff's race. (*Id.* at ¶ 47) ("Defendant discriminated against Plaintiff based on race . . . including by . . . mischaracterizing performance using inapplicable metrics . . . and terminating his employment.").

As a result, the Complaint is left only with the allegation that Plaintiff was terminated on August 5, 2025 (*Id.* at ¶ 23), which Plaintiff summarily concludes was due to his race. *Payton v. Delta Air Lines, Inc.*, Case No. 23-CV-5078, 2024 WL 3201220, *3 (N.D. Ill. June 27, 2024) (dismissing color and sex discrimination claims under Title VII and IHRA because Plaintiff failed to allege enough facts to allow even a plausible inference that the adverse action suffered was

related to her color and sex). This sole statement in summary conclusion does not adequately support a claim of discrimination and, therefore, this Court has ample basis to dismiss Counts I, III, and IV.

### C. Plaintiff has not alleged that he exhausted his administrative remedies for his IHRA claims (Counts IV and V).

Finally, Plaintiff's IHRA claims under Counts IV and V should be separately dismissed because the Complaint does not allege Plaintiff exhausted his administrative remedies. A plaintiff may file a civil suit under the IHRA only after the IDHR investigates the charge and issues a report, 775 ILCS 5/7A-102(D), or, if the IDHR has not issued a report within one year of the charge, within 90-days of that failure, 775 ILCS 5/7A-102(G)(2). Alternatively, the complainant may timely opt-out of the IDHR's investigation within 60-days of the IDHR's notice to the complainant. 775 ILCS 5/7A-102(B); *see also Avet v. Dart*, No. 21-CV-2354, 2021 WL 5865715, at *5 (N.D. Ill. Dec. 10, 2021) (describing the "three exhaustion pathways."). Significantly, "[t]he IHRA's exhaustion requirement for state-law claims brought under the act is distinct from the exhaustion requirement imposed by Title VII. A plaintiff therefore cannot satisfy the IHRA's exhaustion requirement merely by pointing to a right-to-sue letter the plaintiff obtained from the EEOC." *Cora v. Tootsie Roll Indus., LLC*, No. 18-CV-07468, 2024 WL 1363537, at *9 (N.D. Ill. Mar. 29, 2024) (J. Pacold) (citing additional cases). "Failure to comply with the IHRA's exhaustion requirements warrants dismissal of an IHRA claim." *Id.* (quoting *Smith v. City of Chicago*, No. 18 C 8075, 2021 WL 463235 (N.D. Ill. Feb. 9, 2021), *aff'd sub nom. Smith v. Evans*, No. 20-2556, 2022 WL 205414 (7th Cir. Jan. 24, 2022) (unpublished).

In *Avet*, the court dismissed the plaintiff's retaliation claim under the IHRA, which the plaintiff cross-filed with the IDHR and EEOC, and summarily alleged in the complaint that he "exhausted his administrative remedies." *Avet*, 2021 WL 5865715, at *5. In its opinion, the court

noted that the complaint failed to identify which "exhaustion pathway" the plaintiff utilized, concluding "the lay of the land is uncertain on the exhaustion of the state law claim." *Id.* at *6. ("[The plaintiff] does not allege whether he opted out. It's not clear when the IDHR began and completed its investigation. The complaint does not allege whether the IDHR issued a report, either, or whether he ever asked the IDHR to review the EEOC's decision. If he received a report from the IDHR, it is unclear when he received it.").

The Complaint, here, is similarly vague on whether, when and how Plaintiff exhausted his administrative remedies under the IHRA, and, in fact, fails to plead exhaustion for his IHRA claims at all. (Compl. at ¶ 6). The Complaint alleges only facts related to administrative exhaustion of the Title VII claims: "All conditions precedent to suit *under Title VII* have been satisfied. Plaintiff filed a timely charge *with the EEOC* and has received and has received the Right-to-Sue Notice attached hereto as Exhibit A." (*Id.*; emphasis added). Exhibit A only includes the EEOC Right-To-Sue Notice. (Compl., Ex. A). The Complaint relies exclusively on Plaintiff's Notice of Right to Sue from the EEOC to establish exhaustion for his claims under the IHRA, which is not sufficient. *Cora*, 2024 WL 1363537 at *9 ("A plaintiff therefore cannot satisfy the IHRA's exhaustion requirement merely by pointing to a right-to-sue letter the plaintiff obtained from the EEOC."). Having failed to allege that Plaintiff has satisfied his administrative exhaustion requirements under the IHRA, Counts IV and V also should be dismissed.

## V. CONCLUSION

WHEREFORE, Defendant Google LLC requests this Court enter an Order granting its Rule 12(b)(6) Motion to Dismiss, dismissing Counts I-V in their entirety with prejudice, and granting such further relief as this Court deems just and proper.

**[SIGNATURE BLOCK ON NEXT PAGE]**

Date: July 14, 2026

Respectfully submitted,

By: Zev Grumet-Morris
One of the Attorneys for Defendant Google LLC

John Cooke (#6354591)
Alex Karasik (#6320893)
Jennifer Long (#6237572)
Zev Grumet-Morris (#6335966)
DUANE MORRIS LLP
190 S. LaSalle Street, Suite 3700
Chicago, IL 60603
*jdcooke@duanemorris.com*
*AWKarasik@duanemorris.com*
*jlong@duanemorris.com*
*zgrumetmorris@duanemorris.com*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 14, 2026, he caused the foregoing document to be electronically filed with the Court using the CM/ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Zev Grumet-Morris*
One of the Attorneys for Defendant
Google LLC